UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

BAYCHAR INC., *et al.*,  )
                         )
    Plaintiffs and counter-  )
    claim defendants,  )
                         )
v.                       )
                         )   Civil No. 04-136-B-C
SALOMON / NORTH AMERICA, INC.,  )
                         )
    Defendant and counter-  )
    claim plaintiff.  )

**RECOMMENDED DECISION ON PATENT CLAIM CONSTRUCTION**

The plaintiffs in this action assert that the defendants are infringing upon their so-called '810 patent by constructing a boot liner falling within the scope of the eighth claim covered by the '810 patent ("Claim 8"). The patent claim was previously construed by Chief Judge Singal in the context of civil action number 1:01-28. The plaintiffs request that the court construe Claim 8 to consider whether certain modifications or variations on the defendants' claim practiced by the defendants infringes upon the moisture transfer system taught by Claim 8. I conclude that the first of the defendants' two variations falls within the scope of the claim but that the second does not and recommend that the Court construe Claim 8 in the manner set forth in the conclusion of this Recommended Decision.

**I. THE CLAIM 8 CONTROVERSY**

The '810 patent relates a system of boot liners that are designed to transfer moisture away from the wearer's foot, through a series of breathable layers, including an "active" moisture

transferring layer, to the outside of the liners.  Claim 8 refers to a liner system comprised as follows:

> A liner comprising:
>
>> an inner moisture transfer material;
>>
>> a first layer of foam attached to the inner moisture transfer material;
>>
>> a <u>non-woven top sheet</u> attached to the first layer of foam; and
>>
>> wherein the first layer of foam is <u>treated to have reversible enhanced thermal properties</u>.

(Patent No. 6,048,810 at 20, col. 14, Docket No. 24, Elec. Attach. 2) (emphasis added to highlight subject of claim dispute).  Judge Singal previously construed some seven or eight of the terms and phrases used to describe this claim.  For purposes of the present contest, the parties' dispute only whether the liners produced by the defendants use "a non-woven top sheet" and a "treated" first layer of foam.  (Pls.' Brief at 3, Docket No. 24; Defs.' Brief at 2-4, Docket No. 25.) The briefs reflect that where the claim describes a non-woven top sheet, the defendants have inserted a "scrim" and that, instead of treating the first layer of foam by embedding or coating it with "phase change materials (PCMs)," the defendants have applied a "temperature regulating membrane" to provide enhanced thermal properties.

In his prior Patent Claim Construction Order, Chief Judge Singal made the following finding regarding the disputed terms:

### "Non-woven top sheet"

> There appears to be no dispute between the parties as to this definition.  The '810 patent does not define "non woven top sheet," although it names "wood pulp, rayon, cotton, polypropylene, polyester, lycra, or a combination thereof" as the elements of the non-woven material.  In the absence of further clarification in the specification, the parties agree that various definitions of "non-woven" submitted as extrinsic evidence by Defendants are informative.  The Court, borrowing from these definitions, construes "*a non-woven top sheet*" as *a sheet, web or batt of*

> *fibers or filaments of wood pulp, rayon, cotton, polypropylene, polyester, lycra, or a combination thereof that are bonded to each other by any of several means. Papers, wovens, knits and felts are specifically excluded.* The parties each stressed qualifications to this generic definition, none of which was objected to by the other. The Court adopts these qualifications as incorporated into its construction: (1) there is no minimum thickness for the non-woven top sheet; (2) certain materials loosely defined as "felts," but not made of animal hair or paper, are *not* excluded from the definition of "non-woven" top sheet; and (3) a scrim, gauze, netting, yarn or other conventional sheet material may be added to one or both faces of the top sheet, or embedded within as reinforcement.

(Patent Claim Constr. Order at 11-12; Docket No. 25, Ex. 2.)

### "Wherein the first layer of foam is treated . . ."

> The Court construes "*wherein the first layer of foam is treated to have reversible enhanced thermal properties*" to mean "*wherein the first layer of foam possesses reversible enhanced thermal properties by means of being coated with PCMs* [phase change materials], *or having PCMs embedded within it, or by means of some other process that does not involve the physical attachment of a tangible, distinct layer of material, such as a temperature regulating membrane, to the surface of the foam.*

(Id. at 14.) The plaintiffs ask the Court now to supplement the first construction to include the following language: "Scrims having the characteristics of non-wovens are included." (Pls.' Brief at 3.) They also advocate that the following language be appended to the second construction: "or by applying a temperature regulating membrane to the surface of the foam." (Id.) The defendants simply ask that the Court leave Judge Singal's construction undisturbed. (Defs.' Brief 11.) They also maintain that the plaintiffs are collaterally estopped from relitigating the scope of Claim 8. (Id. at 10-11.) The parties have attached various record materials to their briefs and have indicated that they do not desire a Markman hearing unless the Court should wish to hold one.

**STANDARD FOR PATENT CONSTRUCTION**

When it comes to resolving a dispute over the construction to be given to a term in a patent claim, the court is to give terms the "ordinary and customary meaning" that would be given to them by "a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). Thankfully, there are many cases in which "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1313. However, if the ordinary meaning of a term is not readily apparent, the court should read through the entire patent, including the patent specification and the others claims asserted in the patent to determine if the term is somewhere defined by the inventor, or if the context in which the term is used elsewhere or other terms associated with the disputed term might support a particular construction. Id. at 1313-16. If the court is still puzzled, it should then consider the patent prosecution history to see if the Patent and Trademark Office might have interpreted the term in a particular way or, even more significantly, if the inventor failed to object to a construction supplied by the PTO. Id. at 1317. In effect, the court should do what an inventor might do in order to learn the nature and scope of the invention taught by the patent. Id. at 1314. If the meaning of a disputed term still evades the court after conducting this review of "intrinsic" evidence, a definition provided in a learned treatise or in a specialized or even general dictionary might be relied upon,[1] or the court might choose to consider expert testimony by those skilled in

---

[1] The Federal Circuit recognizes that district court judges are apt to reach for the dictionary as the first step in this quest for understanding. Phillips, 415 F.3d at 1324. The important thing is that the judge must not attach greater weight to any extrinsic reference guide than it does to intrinsic evidence:

> [W]e recognized that there is no magic formula or catechism for conducting claim construction. Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is

the art, including the inventor. Id. at 1317-18. Although such extrinsic evidence "may be useful," the Federal Circuit has cautioned that "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1319. In effect, evidence extrinsic to the patent should not be treated as dispositive when it is in tension with evidence intrinsic to the patent. Id. at 1320-1324.

## DISCUSSION

Although I do not presume to be expert in the field of textile engineering, I conclude that both of the plaintiffs' requests can be resolved based on the "ordinary and customary meaning" of the terms "sheet" and "treated." I address each term in turn.

**A.     Non-woven top sheet**

The plaintiffs assert that a reasonable construction of Claim 8 would recognize that a non-woven scrim could fall within the definition of a "non-woven top sheet." Based on the parties' briefing, I fail to see any principled way to articulate why a non-woven "scrim" would be anything other than a non-woven "top sheet" when it is inserted as the top sheet layer of the boot liner described in Claim 8. Although the term "top sheet" is not defined in the '810 patent, the customary and ordinary definition of "sheet" might well serve as about the broadest term anyone could use to describe the wide assortment of fibers, filaments, weaves, non-weaves, fabrics, materials, batts, webs, and so forth, all of which are produced in "sheets" (large, rectangular pieces) or sheet rolls, any of which might, in theory, be placed at the outer layer of the boot liner described in Claim 8, assuming that the sheet good in question is both "non-woven" and

---

> unambiguous in light of the intrinsic evidence. . . . For example, a judge who encounters a claim term while reading a patent might consult a general purpose or specialized dictionary to begin to understand the meaning of the term, before reviewing the remainder of the patent to determine how the patentee has used the term. The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law.

Id.

"breathable" so as to serve the purposes of Claim 8.  Given the breadth of the term "sheet," it seems to me to be beyond question that it incorporates within its meaning a "scrim."  I note that the construction previously given by Chief Judge Singal, which neither party really quibbles over, recognized that a scrim might come to be inserted at the top sheet layer, albeit as an additional or embedded layer; indeed, the Chief Judge flatly described a scrim as a "conventional sheet material."  Because neither party suggests that Chief Judge Singal incorrectly defined a scrim to be a type of sheet material[2] (see the language of the third qualification he imposed on his construction of "non-woven top sheet"), and because the ordinary construction of the term "sheet" would encompass a scrim, among a plethora of other sheet goods, I conclude that the plaintiffs' requested construction is appropriate, provided, of course, that the scrim is non-woven and is breathable.  Accordingly, I would construe the term "non-woven top sheet" to include a non-woven scrim inserted at the top sheet layer of the boot liner described in Claim 8.

**B.     Wherein the first layer of foam is treated**

The plaintiffs would have the court depart from Chief Judge Singal's prior determination that the term "treated" does not include the insertion or attachment of a distinct layer of temperature-regulating material or membrane adjacent to or on the first layer of foam.  I conclude that the plaintiffs' request does not comport with the ordinary and customary meaning of the term "treated."  A layer of foam is not "treated" simply by placing another layer of material adjacent to it.  In the event that the Court should conclude that the term "treated" is not readily amendable to this construction, I conclude that the intrinsic evidence Chief Judge Singal

---

[2] The defendants complain that inclusion of scrims in the "sheet" category is confusing because scrims "come in a multitude of styles and materials."  (Defs.' Response at 3, Docket No. 27.)  Of course, so do sheets.  The more obvious rejoinder is that the scrim must be non-woven and breathable to come within the language of Claim 8. I note that the defendants' initial brief focuses almost entirely on the meaning of "non-woven," without even asserting that a scrim cannot be a non-woven sheet.  (Defs.' Brief at 11-14.)  The point is, as the defendants appear to recognize in their responsive brief: "If the top sheet is a non-woven, then this element of Claim 8 would be satisfied and if the top sheet is something other than a non-woven, the element is not satisfied."  (Defs.' Response at 4.)

previously relied upon reflects that the term does not include the mere layering or attachment of a distinct layer or "membrane" of material adjacent to the first layer of foam.  Chief Judge Singal rejected a construction of the term "treated" that would include insertion of another layer because:

> [A]ll of the Claims in the '810 patent describe a composite material consisting of distinct elements, each having its own qualities.  There is no indication anywhere in the patent that the mere attachment or application of one layer to the next renders the two layers a single, unified "treated" element.

(Patent Claim Constr. Order at 14.)

**C.**     **Issue Preclusion**

The defendants argue that the plaintiffs are collaterally estopped from "challenging" Chief Judge Singal's prior claim construction.  (Defs.' Brief at 10-11.)  In the wake of that initial claim construction—and prior to the court's consideration of any dispositive motions—the prior litigation settled.  I am not persuaded that those circumstances would support a finding "that the determination of the issue in the prior proceeding was essential to [a] *final judgment* or order." Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 430 (1st Cir. 2005) (describing the fourth element of the collateral estoppel standard).  I do note, however, that proper claim construction presents an issue of law for the court to decide and consistency would best serve the ends of justice. Markman v. Westview Instruments, Inc., 517 U.S. 370, 390 (1995) (noting the "importance of uniformity of treatment of a given patent as an independent reason to allocate all issues of construction to the court"), aff'g, 52 F.3d at 1011 (holding "that the interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court").  In any event, I do not consider any aspect of my recommendation to be materially in conflict with the construction first articulated by the Chief Judge.

## CONCLUSION

For the reasons set forth herein, I RECOMMEND that the Court construe Claim 8 to include within its description a liner that utilizes a non-woven scrim as a top sheet, but not a liner that incorporates a distinct layer or membrane of temperature-regulating material adjacent to or on the first layer of foam.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: October 6, 2005