UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| BAYCHAR, INC. and<br>BAYCHAR HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 04-136-B-C |
| | ) | |
| SALOMON NORTH AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

RECOMMENDED DECISION ON DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT ASSERTING PATENT INVALIDITY AND NON-INFRINGEMENT

Defendant Salomon North America has filed a collection of summary judgment motions

against the patent infringement claims brought by Plaintiffs Baychar, Inc., and Baychar

Holdings, LLC.  The first three summary judgment motions on the docket each present a

different defense for which Salomon would bear the burden of proof at trial.  The fourth motion

asserts that the accused products do not infringe the specified claim in the patent.  Unlike the

other three motions, the plaintiffs bear the burden on the issue of infringement.  I recommend

herein that summary judgment enter in favor of Salomon on the ground that the plaintiffs fail to

generate a genuine issue of material fact that the accused products infringe the patent and,

alternatively, on the ground that Salomon had an implied license to make the accused products

even if they do infringe the patent.  Salomon's other two motions for summary judgment directly

relate to the patent's validity, and I recommend the court dismiss these motions as moot if it

adopts either or both of my recommendations on the other two motions.  Therefore I have not

made a recommendation on the issue of the patent's underlying validity in this case.

**Docket No. 92 (Motion for Oral Argument/Hearing)**

Defendant has filed a motion for oral argument.  This matter has been extensively briefed and the parties' submissions have set forth their respective positions.  I see no need for oral argument at this juncture.  I now deny the motion without prejudice to either party's right to renew the request if objections are filed regarding this recommended decision.

**Background**

Baychar, Inc., and Baychar Holdings, LLC (collectively referred to hereinafter as "Baychar") claim that certain sports apparel made by Salomon infringe independent claim 8 of United States Patent No. 6,048,810 (the "'810 patent"), which was issued to Baychar[1] on April 11, 2000, and which is now held by Baychar Holdings.  (First Am. Compl. ¶¶ 7, 10, Docket No. 5.)  As stated in the complaint, claim 8 of the '810 patent "claimed the right to [a] three-layered composite of moisture vapor transfer material" containing an inner layer of foam treated with phase change materials (PCMs)[2] to have "reversible enhanced thermal properties."  (Id. ¶ 7.)  According to record sources, this technology permits clothing to which PCMs are applied to absorb body heat and release it again when the amount of heat being generated by the wearer falls below a certain level.  This is made possible because microencapsulated phase change materials "phase" between solid and liquid at certain temperatures and absorb or release energy in the process.  This technology promises to afford apparel makers with one means of manufacturing clothing that insulates the body against cold weather without having to include layers of bulky insulation such as goose down.  Claim 8 of the '810 patent teaches a means of incorporating PCMs into a three-layer composite liner material that can be used in athletic wear

---

[1]    The Baychar to whom the patent was issued is an individual inventor, not a corporation or company. Accordingly, the Recommended Decision uses singular female pronouns to refer to "Baychar" although the nominal plaintiffs in this action are the Baychar commercial entities.

[2]    The PCM technology has been patented by another entity that is not a party to this suit.

such as ski boot or snowboard boot liners and other articles of clothing.  However, an additional

limitation of claim 8 (found in the patent specification) is that the liner material be "breathable."

Thus, claim 8 purports to teach a composite material for use as a liner that both insulates and

breathes, which Baychar asserts is an advancement over the prior art.

The language of claim 8 is as follows:

A liner comprising:

> an inner moisture transfer material;

> a first layer of foam attached to the inner moisture transfer material;

> a non-woven top sheet attached to the first layer of foam; and

> wherein the first layer of foam is treated to have reversible enhanced
> thermal properties.

Judge Singal held a <u>Markman</u> hearing on May 13, 2002, in a prior action by Baychar against

Frisby Technologies and other defendants and issued on August 1, 2002, a Patent Claim

Construction Order that construed certain terminology used to describe claim 8.  <u>Baychar v.

Frisby Technologies</u>, 230 F. Supp. 2d 75 (D. Me. 2002).  In particular, Judge Singal found that

the parties to that litigation agreed that, in order to come within the scope of claim 8, a liner must

possesses certain "moisture transfer qualities" and be "breathable."  <u>Id.</u> at 78.  As for

"breathable," Judge Singal found that breathable means that the every layer of the liner must be

permeable to water vapor.  <u>Id.</u> at 78-79 & n.1.  Judge Singal construed "moisture transfer" as an

ability to "conduct[] moisture via any one of a number of water-transferring processes, including

but not limited to wicking, absorbing, adsorbing, siphoning, capillary action and the like."  <u>Id.</u> at

79.  Unlike the breathable limitation, the moisture transfer limitation need not exist in every layer

of the liner, but must exist in the inner layer of the claim 8 composite (the layer nearest the

wearer).  <u>Id.</u> n.1.

For purposes of the pending summary judgment motions the moisture transfer and breathable limitations are the material limitations. Claim construction matters raised in the instant litigation have not taken issue with Judge Singal's prior construction of these two limitations but have, instead, raised construction issues that do not appear to be of central concern to the pending motions. (See Report and Recommended Decision re. Claim 8, Docket No. 31, addressing the "non-woven top sheet" and "wherein the first layer of foam is treated" language of claim 8.)[3]

### Discussion

Of the four motions submitted by Salomon, three assert affirmative defenses to Baychar's infringement action and one challenges Baychar's ability to demonstrate infringement by the accused products. In the first motion (Docket No. 37) it is asserted that the invention described in claim 8 of the '810 patent is invalid because it was anticipated by the prior art. In the second motion (Docket No. 49) invalidity is asserted based on the obviousness of the invention. In the third motion (Docket No. 51) Salomon asserts that the action cannot be maintained because the accused articles were made with component articles that were the subject of the prior litigation and, as a consequence of the settlement of that action, derivative articles have become impliedly licensed or, stated otherwise, Baychar's patent rights concerning those articles have been exhausted. Finally, with its fourth motion (Docket No. 53) Salomon contends that the infringement action cannot proceed because the accused products do not satisfy all of the limitations of claim 8. I address Salomon's affirmative defenses first and the question of infringement last.

---

[3]      The "top sheet" and "treated" limitations are material to the parallel action of <u>Baychar, Inc. v. The Burton Company</u>, No. 04-CV-144-B-C. A companion recommendation will be issued in that matter in due course.

### A.        Patent Invalidity Defenses (Anticipation and Obviousness)

"A patent shall be presumed valid."  35 U.S.C. § 282 (2000).  To overcome this

presumption of validity, the party challenging a patent must prove facts supporting a

determination of invalidity by clear and convincing evidence.  Apotex USA, Inc. v. Merck &

Co., 254 F.3d 1031, 1036 (Fed. Cir. 2001), cert. denied, 534 U.S. 1172 (2002) (citing Am. Hoist

& Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360 (Fed. Cir. 1984)).

According to Salomon N.A., claim 8 of the '810 patent is anticipated by two[4] instances of

prior art and is therefore invalid.  Salomon's anticipation arguments are premised on subsections

(b) and (e) of section 102 of the Patent Act.  Subsection (b) undermines a patentee's right to a

patent when, among other things, "the invention was . . . on sale in this country, more than one

year prior to the date of the application for patent in the United States."  35 U.S.C. § 102 (b).

Subsection (e) undermines a patent when, among other things, the invention was described in a

different patent granted in the United States prior to the date of the patentee's invention.  Id. §

102 (e).

> Anticipation is a question of fact . . . .  A rejection for anticipation under section
> 102 requires that each and every limitation of the claimed invention be disclosed
> in a single prior art reference.  In addition, the reference must be enabling and
> describe the applicant's claimed invention sufficiently to have placed it in
> possession of a person of ordinary skill in the field of the invention.

In re Paulsen, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994) (citation omitted).

Salomon additionally contends that claim 8 of the '810 patent is invalid because the

breathable liner disclosed therein was obvious to one having ordinary skill in the art more than

one year prior to the date of the '810 patent application.  (Obviousness Mot. Summ. J., Docket

No. 49.)  Obviousness is a legal determination, but it is based on underlying issues of fact

---

[4]        Salomon's anticipation motion asserts three instances of prior art, but one instance, a so-called
Outlast/Eclipse product, is not pressed in Salomon's reply memorandum.

consisting of: (1) the scope and content of the prior art; (2) the level of skill of a person of

ordinary skill in the art; (3) the differences between the claimed invention and the teachings of

the prior art; and (4) the extent of any objective indicia of non-obviousness.  Graham v. John

Deere Co., 383 U.S. 1, 17 (1966); SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp., 225 F.3d

1349, 1355 (Fed. Cir. 2000).

> To establish a prima facie case of obviousness, [an alleged infringer] must show
> some objective teaching in the prior art or that knowledge generally available to
> one of ordinary skill in the art would lead that individual to combine the relevant
> teachings of the references.  There is no suggestion to combine, however, if a
> reference teaches away from its combination with another source.  A reference
> may be said to teach away when a person of ordinary skill, upon reading the
> reference, would be discouraged from following the path set out in the reference,
> or would be led in a direction divergent from the path that was taken by the
> applicant . . . [or] if it suggests that the line of development flowing from the
> reference's disclosure is unlikely to be productive of the result sought by the
> applicant.  If when combined, the references would produce a seemingly
> inoperative device, then they teach away from their combination.

Tec Air, Inc. v. Denso Mfg. Mich., Inc., 192 F.3d 1353, 1359-60 (Fed. Cir. 1999) (quotation

marks and citation omitted).  "[B]efore a conclusion of obviousness may be made based on a

combination of references, there must have been a reason, suggestion, or motivation to lead an

inventor to combine those references."  Pro-Mold v. Great Lakes Plastics, 75 F.3d 1568, 1573

(Fed. Cir. 1996).  In other words: "If the invention is different from what is disclosed in one

reference, but the differences are such that combination with another reference would lead to

what is claimed, the obviousness question then requires inquiry into whether there is reason,

suggestion, or motivation to make that combination."  Id. at 1573.

If a prima facie case of obviousness is made out, then the patentee must undermine the

prima facie case with "objective evidence" in rebuttal.  Tec Air, 192 F.3d at 1359.  Indicia of

non-obviousness include evidence that the invention enjoyed commercial success, or that it

satisfied a long-felt, but unmet need, or the failure of others to find a solution to the problem at hand, or copying of the invention by others following its disclosure.  Pro-Mold, 75 F.3d at 1572.

Salomon's obviousness challenge takes a different tack from its anticipation challenge Whereas the anticipation challenge turned on the disclosure of prior art meeting the "breathable" limitation of claim 8, the obviousness challenge is based on an assertion that breathable, three-layer composites consisting of a moisture-transferring inner liner, a second layer of hydrophilic foam and a top layer consisting of a non-woven top sheet, have long been in existence, only not with a foam layer treated with phase change materials (PCMs).  According to Salomon, sometime after the advent of PCM usage in the industry and before one year prior to the '810 patent application it became obvious that PCMs should be directly applied to the foam layer of such a three-layer composite.  (Obviousness Mot. Summ. J. at 7.)  Baychar responds that all of the prior art references presented by Salomon "taught away from claim 8" (Obviousness Opp'n Mem. at 2, 5-6, Docket No. 74), that Salomon uses an improper hindsight approach to show obviousness (id. at 6-8) and that other evidence of the commercial success and copying of the liner disclosed in claim 8 undermine any suggestion of obviousness (id. at 9-10).

Because I believe this particular case can be resolved based upon the other two summary judgment motions filed by Salomon, the issue of the patent's underlying validity is better resolved in some context other than these two summary judgment motions.  In order to resolve these motions the summary judgment record requires analysis of three other patents and the declarations of numerous experts.  I see no reason for this court to gratuitously undertake that project if it is unnecessary and I have recommended that these two motions be dismissed as moot.

**B.      Implied License / Patent Exhaustion**

Salomon's third motion for summary judgment asserts that Baychar's claims are barred by the implied license/patent exhaustion doctrines because the only products alleged to infringe were manufactured from a composite purchased from manufacturers that previously settled infringement claims brought against them by Baychar.  (Mot. for Summ. J. based on Implied License/Patent Exhaustion, Docket No. 51.)

Baychar previously brought claims to enforce the '810 patent in this Court in the matter of <u>Baychar, Inc., et. al v. Frisby Technologies, Inc.,</u> 01-CV-28-B-S.  (Implied License SMF ¶ 4, Docket No. 52.)  The defendants in that action were Frisby Technologies, Inc., Schoeller Textile, AG, Schoeller Textile USA, Inc., Schoeller Frisby Technologies, GmbH, and Outlast Technologies, Inc.  (<u>Id.</u> ¶ 5.)  On February 3, 2003, the claims in the Frisby action were dismissed with prejudice pursuant to a Settlement Agreement and License Agreement between the Baychar plaintiffs and Schoeller Textile AG, Schoeller Textile USA, Inc. and Schoeller Frisby GmbH (collectively, "the Schoeller Parties").  (<u>Id.</u> ¶ 6.)  The Settlement Agreement was executed on January 22, 2003.  (<u>Id.</u> ¶ 7.)  Pursuant to the Settlement Agreement, the Schoeller parties acknowledged the validity of the '810 patent, agreed to pay a sum certain[5] plus royalties on net sales of Licensed Products in exchange for which Baychar released the Schoeller parties from all claims raised in the prior action, including claims of infringement of the '810 patent. (<u>Id.</u> ¶¶ 8, 11.)  The wording of the release was as follows:  "Such payment is in full satisfaction of all claims of Baychar arising out of the claims of the Action."  (<u>Id.</u> ¶ 8.)

Also on January 22, 2003, Baychar and the Schoeller parties entered into a License Agreement whereby Baychar granted the Schoeller parties a license to make and have made

---

[5]      The parties have sought to keep the dollar figures confidential.  The relevant exhibits have been filed under seal.

anywhere in the world, and to import, offer for sale, market and sell, directly or through affiliates or distributors, licensed products to customers anywhere in the world who incorporate the licensed products in manufactured goods.  (Id. ¶ 9.)  The License Agreement references the '810 patent as the subject patent and the licensed products as any device, product, sample, fabric, textile, composite or laminate the manufacture, use, sale, offer for sale or importation of which would directly, contributorily or through inducement, infringe claim 8 of the '810 patent.  (Id. ¶ 10.)

Prior to the effective date of the settlement between Schoeller and Baychar, Salomon made and sold Bonfire fleece jackets, Bonfire GT jackets and Bonfire GT pants that incorporated Schoeller Comfortemp phase change material, apparently a three-layer composite fabric.  (Id. ¶ 12.)  Salomon procured the Schoeller Comfortemp phase change material from the Schoeller parties.  (Id. ¶ 14.)

Salomon asserts that it is entitled to summary judgment on Baychar's claims because her acceptance of valuable consideration in exchange for licensing Schoeller to make and sell the infringing product and in exchange for releasing all claims concerning past sales of Comfortemp expressly licensed all post-settlement use of Schoeller Comfortemp by third parties and impliedly licensed (retroactively) all pre-settlement use of Schoeller's infringing product by third parties.  (Salomon's Mot. for Summ. J. re. Implied License/Patent Exhaustion at 2, Docket No. 51.)  In opposition, Baychar asserts that the settlement with Schoeller is relevant only with respect to products made from Schoeller Comfortemp by third parties after the effective date of the Settlement Agreement and License.  (Pl.'s Opp'n re. Implied License/Patent Exhaustion at 1-2, Docket No. 72.)  Baychar argues that the settlement did not result in a retroactive implied license in regard to Salomon's sale of infringing Bonfire GT products that incorporated Schoeller

Comfortemp prior to the effective date of the settlement because any earlier sales of Comfortemp were not preauthorized by her.  (Id.)  Not so responds Salomon, because the giving of valuable consideration in settlement of the claims against the Schoeller parties for all prior sales of infringing articles exhausted Baychar's patent rights as to those articles or, stated otherwise, impliedly licensed those sales retroactively.  (Salomon's Reply re. Implied License/Patent Exhaustion at 4-5, Docket No. 85.)  One thing that emerges from the back-and-forth argumentation is that the parties are in agreement that Baychar does not have any claim with regard to Salomon's utilization of Schoeller Comfortemp in its Bonfire GT products subsequent to January 22, 2003.  Accordingly, Salomon is entitled to summary judgment against Baychar's infringement claim to the extent that they depend on Salomon's Bonfire GT products made or sold after January 22, 2003.  As for Bonfire GT products made and sold prior to the effective date, the law is unclear.

The principle of patent exhaustion holds that "[t]he unrestricted sale of a patented article, by or with the authority of the patentee, 'exhausts' the patentee's right to control further sale and use of that article by enforcing the patent under which it was first sold."  Jazz Photo Corp. v. ITC, 264 F.3d 1094, 1105 (Fed. Cir. 2001); see also Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent.").  By operation of this principle, the January 2003 license authorizing Schoeller to make, market and sell its Comfortemp material exhausted any right in Baychar to enforce her patent against third parties who should subsequently use Comfortemp in their own products.  The "unrestricted sale" is not the bargain between Baychar and the Schoeller parties that resulted in a settlement and license.  Rather, it is the unrestricted sales by Schoeller of its product pursuant to the authority granted in the license.

But does the principle of exhaustion also apply to infringing sales of finished products made with Comfortemp prior to the Settlement Agreement and License Agreement, for which Schoeller also gave valuable consideration in settlement of all of Baychar's claims?  According to the cases cited by the parties, that can only be the case if the circumstances of the settlement imply a retroactive license with regard to Schoeller's earlier sales of the Comfortemp articles.  The key to answering that question is "whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article."  Jazz Photo, 264 F.3d at 1105 (quoting United States v. Masonite Corp., 316 U.S. 265, 278 (1942)). Thus, although "parties that make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale" and "[e]ach joint tort-feasor is liable for the full amount of damages . . . suffered by the patentee," there may yet be only one recovery or satisfaction.  Shockley v. Arcan, Inc., 248 F.3d 1349, 1364 (Fed. Cir. 2001).  Whether the principle of patent exhaustion or implied license should be recognized is a matter of law for the Court to decide.  Carborundum Co. v. Molten Metal Equip. Innovations, 72 F.3d 872, 877-78 (Fed. Cir. 1995).  As the alleged infringer, Salomon bears the burden of establishing this legal defense.  Id. at 878.

In King Instrument Corp. v. Otari Corp., 814 F.2d 1560 (Fed. Cir. 1987), the Court of Appeals for the Federal Circuit held that a party who has paid damages on a patent infringement suit for sales of infringing articles receives an implied license on past sales.  Id. at 1564 (citing Union Tool Co. v. Wilson, 259 U.S. 107, 113 (1922) ("A patentee, in demanding and receiving full compensation for the wrongful use of his invention in devices made and sold by a manufacturer adopts the sales as though made by himself, and therefore, necessarily licenses the use of the devices, and frees them from the monopoly of the patent.")).  In other words, the law

11

treats the payment of full compensation for past sales and use as transforming those sales and uses into licensed sales and uses.  As with the payment of damages, the key to the application of the implied license principle based on settlements appears to be whether the patentee has received, in the words of Union Tool, "full compensation."  See Glenayre Elecs., Inc. v. Jackson, 443 F.3d 851, 866-870 (Fed. Cir. 2006) (discussing Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476 (1961), which considered the contributory liability of a party when the primary infringer had settled claims and received a release pertaining to the infringing articles).  In Aro, among other pertinent pronouncements, the Supreme Court held that "[a] release given a direct infringer in respect of past infringement, which clearly intends to save the releasor's rights against a past contributory infringer, does not automatically surrender those rights."[6] Aro, 377 U.S. at 501 (5-4).  A review of the Settlement Agreement in this case does not demonstrate a clear intention to save Baychar's rights to sue other parties who used the subject Schoeller Comfortemp articles to produce their own infringing articles.  On the other hand, a review of the complaint in the prior action reveals that Baychar did not recite a claim for damages based on sales or use made of the invention by any third party customers.[7]  (No. 01-CV-28-B-S, Docket No. 1.)

In Glenayre, the Federal Circuit considered the scope of an implied license generated by a judgment rather than a settlement, and observed that to allow a patentee to pursue successive litigation against a manufacturer to recover reasonable royalties for the use made of articles by the manufacturer's customers would "permit the patentee to relitigate his or her entitlement to

---

[6]    This formulation begs the question: "Does a release given a direct infringer in respect of past infringement, which does not clearly save the releasor's rights against a past contributory infringer, automatically surrender those rights?"

[7]    Comparison of paragraphs 35-38 and 48-52 of the amended complaint in the prior action and paragraphs 8, 9 and 13 in the first amended complaint in the instant action show that both cases arose out of the manufacture and use of the same underlying articles.

'full compensation' with the same adversary a number of times that is equal to the number of

steps that a product takes in the path of commerce."  <u>Glenayre Elecs.</u>, 443 F.3d at 871.[8]  The

Court held that the "inappropriateness of the proposition is apparent."  <u>Id.</u>  Here, of course, the

Schoeller parties are not named defendants in this second litigation, so at least one aspect of the

proposition does not apply.  Still, we have here a successive litigation that is based on the same

infringing Comfortemp articles, only incorporated into finished consumer products.

In the absence of the Settlement Agreement, it is clear that Salomon could be held liable

as an infringer to pay royalties on its own sales, assuming the Comfortemp-containing Bonfire

GT products actually infringe claim 8 of the patent.  35 U.S.C. § 271.  The question is whether

the Settlement Agreement and release can be read to extend to third party manufacturers who

purchased and used Schoeller Comfortemp material to make infringing articles prior to the

Settlement Agreement's effective date.  Baychar argues that the Schoeller parties should lose this

motion because the Settlement Agreement did not expressly release the Schoeller parties'

customers.  (Pl.'s Opp'n at 2.)  Although the Settlement Agreement is not written in terms that

expressly release (or reserve) claims against potential infringers who are not parties to the

agreement, it is not true that the Agreement has nothing to say about the potential for liability in

third parties.  In fact, with regard to sales following the effective date of the Agreement, it is

clear from the related License that Schoeller was authorized to manufacture and sell the subject

invention to "customers anywhere in the world who incorporate the Licensed Products in

manufactured goods ultimately marketed and sold to end-user customers."  (License Agreeement

¶ 2.1.)  Implied by this agreement is a separate license in the Schoeller parties' customers to use

---

[8]      <u>Glenayre</u> involved a situation in which the patentee, after receiving a judgment for direct infringement by a
manufacturer, sought to recover in a second trial royalties for the manufacturer's indirect infringement, consisting of
the manufacturer's same conduct of selling infringing products to its customers, but seeking additional damages for
the customers use of the same products.  <u>Glenayre</u>, 443 F.3d at 856.

the Licensed Products they obtain from the Schoeller parties.  This implied license, of course, concerns only sales and uses made under the License Agreement.  However, it reflects that customers' rights were a subject of the settlement negotiations and would appear to fairly raise the question of whether the Schoeller parties' provision of valuable consideration "in <u>full</u> satisfaction of all claims of Baychar arising out of the claims of the Action" was also full compensation for any claim to royalties by Baychar for use of the same Schoeller Comfortemp articles to make additional, derivative articles prior to the settlement's effective date.  (Settlement Agreement ¶ 4.)

 In my view, the patent exhaustion/implied license defense is a legally viable defense under the circumstances of this case, but its application depends upon whether Baychar "received her reward" for the pre-January 22, 2003, articles sold by Schoeller when she received settlement proceeds for alleged infringement by these articles and agreed that such proceeds amounted to "full satisfaction of all claims . . . arising out of the claims of the Action."  Baychar's willingness to release <u>all</u> claims <u>arising out of</u> her claims against the Schoeller parties without clearly reserving her rights against the Schoeller parties' customers is, in my view, conclusive evidence of the fact that the consideration she received was, by agreement, "full compensation" for all articles derived from the Schoeller Comfortemp articles because the Schoeller parties and their customers who incorporated Comfortemp into finished goods were joint tortfeasors with regard to infringing finished products made from the infringing Comfortemp material.  This is so because Schoeller would be an indirect infringer in regard to its customer's directly infringing uses and sales of products derived from Comfortemp articles.  These circumstances tend to support a finding that "full satisfaction of all claims arising out of the claims of the [prior] action" should be construed as extending to infringing uses and sales that derive, necessarily,

from the inclusion of Comfortemp articles in finished products, thereby effectively licensing those products by implication such that, by operation of the exhaustion principle, Salomon should "inherit the same immunity," Jazz Photo, 264 F.3d at 1105, conferred by the release and implied licensing of the Schoeller parties for their manufacture and sale of the Comfortemp articles.  The scope of the implied license is limited to the allegedly infringing articles.  In effect, the conclusion of law would be that the Settlement Agreement with the Schoeller parties was, by agreement, "full satisfaction" (i.e., full compensation) to Baychar for the allegedly wrongful use and sale of Schoeller Comfortemp articles and freed those articles from all claims based on their subsequent use.  Inclusion within the scope of the release of Salomon's use of the Comfortemp articles to make allegedly infringing, derivative Bonfire GT products and the inclusion of the allegedly infringing sales of Bonfire GT articles would follow logically from the fact that claims based on such use and sale, in the words of the Settlement Agreement, "arise from" the Schoeller parties' manufacture and sale of Comfortemp articles to their customers for use in articles of clothing.  The settlement proceeds, in other words, constituted "full satisfaction" of all claims for which the Schoeller parties might otherwise have been liable for indirect infringement based upon a customer's direct infringement.  See Glenayre, 443 F.3d at 873.  Because Baychar agreed that "full satisfaction" was received for any such claims and obtained a judgment to the same effect, the release of the Schoeller parties necessarily extend by law to their joint tortfeasor customers as well.[9]

---

[9]        The existing summary judgment record is not designed to enable a factual finding that compares the value of the settlement proceeds to the value of a reasonable royalty on the Schoeller parties and Salomon's combined infringing sales, plus interest and any other actual damages that might be proved.  To paraphrase the Aro Court:  "If the sum paid by [the Schoeller parties] for the release . . . constituted full satisfaction to [Baychar] for the infringing use . . . it [is] clear that [Baychar] cannot now collect further payment from [Salomon] for . . . the same infringing use."  Aro, 377 U.S. at 502-503 (plurality opinion on this point of law) (citing Restatement of Torts (1939) § 885(3): "Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment . . . .").  Thus, the matter can only be determined at summary judgment

Ultimately, I conclude that the Settlement Agreement implicitly released Baychar's claims against third parties who infringed Baychar's patent by virtue of their prior use of the Schoeller parties' infringing Comfortemp articles in finished consumer products. I draw that conclusion because of the expansive wording of the release contained in the Settlement Agreement. Baychar agreed that the settlement proceeds she received in the prior litigation constituted "full satisfaction of <u>all</u> claims by Baychar <u>arising out of the claims of the Action</u>." (Settlement Agreement ¶ 4 (emphasis added).) In sum, it can fairly be said that Baychar's claims against Salomon arise out of her claims against the Schoeller parties. Thus, they are claims within the language of the release contained in the Settlement Agreement. Alternatively, or perhaps coextensively, the Settlement Agreement and the Consent Judgment, in which Baychar agreed that she received "full satisfaction" of all claims arising out of the claims in the prior action, effectively "adopt[ed] the sales as though made by [her]self, and therefore, necessarily license[d] the use of the [articles], and free[d] them from the monopoly of the patent." <u>Union Tool Co. v. Wilson</u>, 259 U.S. 107, 113 (1922). Accordingly, I recommend that summary judgment enter on those claims involving not only Salomon's use of Comfortemp material in Bonfire GT products after January 22, 2003 (to which the release plainly extends), but also Salomon's use of Comfortemp material to produce Bonfire GT products prior to that date.

## C.      Infringement

With its fourth summary judgment motion, Salomon contends that Baychar cannot establish that any Salomon product actually infringes claim 8 of the '810 patent. (Mot. for

---

if the legal effect of the Settlement Agreement and the Consent Judgment based thereon was to give rise to an implied license or a release that extended to customers who infringed by virtue of using Comfortemp articles in their own products. Like the Settlement Agreement, the Court's Consent Judgment provided that the "payments made by Schoeller, under the parties' Settlement Agreement, is in full satisfaction of all past claims of Baychar against Schoeller for money damages arising out of this Action." (Consent J. ¶ 3, Docket No. 52, Ex. 4.)

Summ. J. of Non-Infringement, Docket No. 53.)  Unlike the preceding motions, in which

Salomon bore the burden of proving its defenses, the existence of an infringing product is

something that Baychar must establish on the record.  Exigent Tech. v. Atrana Solutions, Inc.,

442 F.3d 1301, 1307-1308 (Fed. Cir. 2006).  "The determination of infringement requires a two-

step analysis: (1) claim construction to determine the scope and meaning of the claims asserted

to be infringed, and then (2) a determination of whether the properly construed claims

encompass the accused device."  Zellinski v. Brunswick Corp., 185 F.3d 1311, 1315 (Fed. Cir.

1999) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en

banc), aff'd, 517 U.S. 370 (1996)).  "Claim construction is a matter of law."  Id.  "Whether a

claim encompasses an accused device, either literally or under the doctrine of equivalents, is a

question of fact."  Id.  "Summary judgment on the issue of infringement is proper when no

reasonable jury could find that every limitation recited in a properly construed claim either is or

is not found in the accused device either literally or under the doctrine of equivalents."  PC

Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005).

　　　The following facts are evident from the parties Local Rule 56 statements of material

fact.  The only products Baychar can point to as possibly infringing are the Bonfire GT jacket

and pants referred to previously.  (Non-Infringement SMF ¶¶ 10, 18; Non-Infringement OSMF

¶¶ 10, 15, 17, 18.)[10]  The Bonfire GT jackets and pants that were sold by Salomon were made

with Schoeller Comfortemp phase change materials.  (Non-Infringement SMF ¶¶ 14, 16.)

Schoeller Comfortemp panels that contained phase change materials were sewn into specific

areas of the jacket and pant.  (Non-Infringement SMF ¶¶ 14, 16.)  According to Baychar's expert,

Mr. Butterworth, whose opinion I credit for purposes of summary judgment, the Bonfire GT

---

[10]　　　This finding removes from this litigation the Bonfire fleece jacket and gloves and the Arc'Teryx product
mentioned in Salomon's motion.

jacket is constructed of a warp knit fabric inner moisture-transfer layer and a porous[11] open-cell foam layer coated or impregnated with PCMs that is attached adhesively to a low-density, high-loft non-woven.  (Non-Infringement OSMF ¶ 15.)  Similarly, the Bonfire GT series pants are constructed of a warp knit fabric inner moisture-transfer layer and a porous open-cell foam layer impregnated with PCMs that is attached adhesively to a low density high loft non-woven, and covered with a block warp knit net fabric.  (Id. ¶ 17.)  These assertions contradict Salomon's summary judgment claim that the Bonfire GT products lack an inner moisture-transfer material and a non-woven top sheet and if that were all there was, it would plainly be a question for the factfinder.  But in addition to those challenges, Salomon asserts that the Bonfire GT products fail to satisfy "the liner limitation of claim 8, meaning that not every layer of the liner is permeable to water vapor."  (Non-Infringement SMF ¶ 22.)  In opposition, Baychar cites pages 121-123 of the Butterworth Deposition and page 5 of his declaration, which are attached to her opposition statement (Docket No. 78).  From the deposition transcript it is apparent that Mr. Butterworth concludes that the Bonfire GT pants and jacket contain each of the three layers that are essential to the claim 8 liner.  It is not apparent from the cited portion of the deposition transcript, however, that Mr. Butterworth concluded that the entire three-layer "liner" in these products is permeable to water vapor.  Although Mr. Butterworth testified that he concluded that the products infringed, his determination was based exclusively on a visual inspection.  (Butterworth Dep. at 121, lines 22-24 & 123, line 22 – 124, line 1.)  With particular regard to the limitation that the liner be breathable, Mr. Butterworth makes no reference to it whatsoever in the cited portion of the transcript.  In my view, in the absence of any indication that "breathability," or permeability to water vapor, was specifically analyzed by Mr. Butterworth, his deposition

---

[11]    Baychar's statement of material fact does not include the porous modifier in its description of the foam in the Bonfire GT jacket, but it is obviously an oversight because the modifier is used in regard to the Bonfire GT pants and it is undisputed that both Bonfire GT products were made with the same Schoeller foam component.

testimony that he concluded the Bonfire GT product infringed is, in itself, nothing more than a

conclusory statement and, as such, is insufficient to generate a genuine issue of material fact for

trial.  See Zellinski, 185 F.3d at 1317 (indicating that "conclusory expert declarations devoid of

facts upon which the conclusions were reached fail to raise a genuine issue of material fact which

would preclude summary judgment" and citing Phillips Petroleum Co. v. Huntsman Polymers

Corp., 157 F.3d 866, 876 (Fed. Cir. 1998); McKeown v. Bayshore Concrete Prods. Corp., 34

Fed. Appx. 741, 743 (Fed. Cir. 2002) (unpublished opinion) (affirming summary judgment

where inventor relied on "broad statements in his own affidavit alleging that he has personally

inspected Bayshore's products, compared them to the '020 patent, and found that the accused

structures contain every element of claim 1" because such broad statements are not sufficient to

generate a genuine issue of material fact on the issue of infringement); Brand Mgmt. v. Menard,

Inc., No. 97-1329, 1998 WL 15241, 1998 U.S. App. LEXIS 493, *31 (Fed. Cir. Jan 14, 1998)

(unpublished opinion) ("Expert affidavits or deposition testimony must be based on specific facts

and cannot involve mere . . . conclusory allegations.").

Although Mr. Butterworth's deposition transcript reflects conclusory allegations, it is not

the only evidence cited by Baychar.[12]  In addition, she cites a declaration prepared by Mr.

Butterworth in June 2005.  In my view, Mr. Butterworth's declaration similarly fails to directly

address whether the Bonfire GT products are permeable to water vapor.[13]  In it he simply states

that the Bonfire (presumably Bonfire GT) products are "technically described by claim 8 because

they "at a minimum have [a]n inner moisture transfer layer [a]ttached to [a] first layer of open

cell breathable foam which is [i]mpregnated on the other surface with PCM and [is] [a]ttached to

---

[12]       Baychar's sur-reply memorandum reveals that Mr. Butterworth's deposition testimony is what she chiefly
relies upon to establish infringement.  (Pl.'s Consol. Sur-Reply Mem. at 5, Docket No. 91.)
[13]       The declaration was executed in June 2005 and is more in the nature of an expert opinion disclosure than a
proper summary judgment affidavit or declaration directed toward Salomon's challenges.

a nonwoven."  In other words, like the deposition testimony, the declaration fails to address the

crucial "breathable" limitation that has been so much emphasized by Baychar in order to

distinguish her invention from the prior art references discussed at such great length in the

summary judgment motions relating to anticipation and obviousness.

In opposition to the summary judgment motion, Baychar argues that summary judgment

is not called for because "Salomon fails to satisfy its burden as the moving party of showing that

plaintiffs will be unable to prove the necessary elements of their infringement claim."  (Pl.'s

Mem. in Opp'n to Non-Infringement Mot. at 1, Docket No. 77.)  This assertion misstates who

bears the burden of proof on this motion.  See Exigent Tech., 442 F.3d at 1308-1309 ("In the

light of [Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)], we conclude  that nothing more is

required than the filing of a summary judgment motion stating that the patentee had no

evidence of infringement and pointing to the specific ways in which accused systems did not

meet the claim limitations."); Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1389 (Fed.

Cir. 1992) (to the same effect 14 years prior to Exigent).  I conclude that Salomon's motion

satisfies the Celotex standard because it plainly points to the absence of, among other things,

evidence that the accused products meet the breathable liner limitation.  Baychar, on the other

hand, does not meet her burden because she fails to generate as a genuine issue of material fact

that the accused Bonfire GT products include a liner that is permeable to water vapor through all

layers.  Accordingly, I recommend that the Court grant the motion for summary judgment of

non-infringement.

### Conclusion

For the reasons set forth herein, I RECOMMEND that the Court dismiss as moot

Salomon's motion for summary judgment based on anticipation (Docket No. 37), dismiss as

moot Salomon's motion for summary judgment based on obviousness (Docket No. 49), GRANT

Salomon's motion for summary judgment based on patent exhaustion/implied license (Docket

No. 51), and GRANT Salomon's motion for summary judgment of non-infringement (Docket

No. 53).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 19, 2006