UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BAYCHAR, INC. *et al.*,                            )
                                                   )
                    Plaintiff,                     )
                                                   )
         v.                                        )              1:04-CV-136-DBH
                                                   )
SALOMON / NORTH AMERICA, INC.,                     )
                                                   )
                    Defendant.                     )


**RECOMMENDED DECISION ON MOTION FOR ATTORNEY FEES**

On November 4, 2008, the Court issued its Decision and Order on Defendants' Motions

for Attorney Fees and Expenses.  (Doc. No. 179.)  The Court granted Salomon / North America,

Inc.'s Motion for Attorney Fees and Expenses, but only to a limited extent, and referred "the

determination of the amount of attorney fees to the Magistrate Judge for a recommended

decision."  (Id. at 14.)  Given the limitation placed on the award I ordered supplemental briefing.

Based on the supplemental briefing and supplemental exhibits, I recommend that the Court

award Salomon $106,435.16 in attorney fees and $1,872.38 in related expenses.

**THE MOTION**

On August 8, 2008, Defendant Salomon / North America, Inc., filed a motion for attorney

fees pursuant to § 285 of the Patent Act, requesting $455,229.94 for legal services invoiced

between December 2004 and July 2008 by Holland & Hart, and an additional $27,228.85 for

expenses related to expert witness services and attorney travel billed by Holland & Hart, for a

total of $482,458.79 in attorney fees and related expenses.  (Hartley Decl. ¶¶ 63-64, Doc. No.

170.)  Salomon also retained the services of counselors at Testa, Hurwitz & Thibeault, LLP, and

subsequently at Goodwin Proctor, LLP, to monitor the work of Holland & Hart, because Holland

& Hart was not representing Salomon's interest exclusively.[1]  (Kline Decl. ¶¶ 1-7, Doc. No. 170-18;  Stamos Decl. ¶¶ 5-7, Doc. No. 183 (sealed).)[2]  In addition to seeking the Holland & Hart fees and expenses, Salomon also seeks to recover the fees and expenses it paid to Testa Hurwitz and to Goodwin Proctor.  Salomon requested $206,819.75 for fees and $2,392.63 for related expenses.  (Id. ¶¶ 9-10 & Attach. C.)  The gross figure for all fees and expenses sought in the original motion was $691,671.17.  (Def.'s Mot. for Attorney Fees and Expenses at 15, Doc. No. 169.)

On November 4, 2008, the Court issued an order in which it concluded that some of the fees sought by Salomon should be awarded, but not all.  The Court concluded that Baychar's patent litigation against Salomon was not "exceptional" or "vexatious" in its entirety, and ordered that fees and expenses could not be awarded for attorney time and expenses incurred on or before June 24, 2005, and that only time spent defending infringement claims against 20 of 22 identified product lines would be compensated.  In the Court's words:  "[T]he fees shall be apportioned so as not to include those incurred by Salomon in defending the two colorable claims or in defending the twenty products prior to issuance of Baychar's expert's report."  (Dec. and Order at 14, Doc. No. 179.)  As a consequence of this order, most of the work Salomon's counsel did in this case cannot be compensated in the fee-shifting award.  For example, the considerable amount of work that went into Salomon's defenses pertaining to patent exhaustion, anticipation, and obviousness is excluded because Salomon would have performed that work in order to

---

[1]     Holland & Hart represented a number of defendants against patent claims brought by the Baychar plaintiffs on the same patent.  Consequently, Salomon paid only a portion of the fees billed by Holland & Hart.  Work that benefitted only the other defendants has not been sought in this motion, even though it appears that Salomon had entered into an agreement to pay 25% of the bills issued by Holland & Hart at some point in time.  (Second Hartley Decl. ¶¶ 8-9, Doc. No. 184.)

[2]     Mr. Kline transitioned from Testa Hurwitz to Goodwin Proctor in 2005 and was the attorney in charge of the Salomon matter.  In other words, Salomon was not paying for two law firms to simultaneously monitor Holland & Hart's work.

2

defend the two colorable claims.  In effect, the solitary defense that remains relevant to the motion for fees is the non-infringement defense, but only to the extent that work on that defense relates exclusively to the 20 products concerning which the plaintiffs failed to generate even a colorable case.

Because Salomon's original motion for fees was not calibrated to account for these temporal and topical restrictions, I ordered Salomon to file a supplemental request to permit an award limited in the manner specified by the Court.  (Order to Supplement, Doc. No. 180.)

Salomon filed its supplemental memorandum, exhibits and affidavit on December 19 and 20, 2008.  (Doc. Nos. 181-186.)  As instructed, Salomon has excluded all fees incurred as of June 24, 2005.  (Def.'s Supp. Mem. at 1, Doc. No. 181.)  In addition, Salomon excluded from its fee request fees associated with the following defensive maneuvers that were not primarily concerned with the issue of non-infringement:

(a) preparing for and taking depositions that were not primarily related to Baychar's infringement allegations. The specific depositions were of:

Shrinath Malur (Baychar's patent counsel);

Lee Breidenbach (third-party witness alleging knowledge of Baychar's conception and reduction to practice of Claim 8 of the '810 Patent);  and

John Baier (third-party witness alleging knowledge of Baychar's conception and reduction to practice of Claim 8 of the '810 Patent);

(b) researching and drafting the opening claim construction brief, including the declarations submitted therewith;

(c) researching and drafting the responsive claim construction brief, including the declaration submitted therewith;

3

(d)  researching and drafting the motion for summary judgment of invalidity
     (anticipation), including the declarations submitted therewith;

(e)  researching and drafting the reply brief in support of the motion for summary
     judgment of invalidity (anticipation), including the declarations submitted therewith;

(f)  researching and drafting the motion for summary judgment of invalidity
     (obviousness), including the declarations submitted therewith;

(g)  researching and drafting the reply brief in support of the motion for summary
     judgment of invalidity (obviousness), including the declarations submitted therewith;

(h)  researching and drafting the motion for summary judgment based on implied
     license/patent exhaustion, including the declaration submitted therewith;

(i)  researching and drafting the reply brief in support of the motion for summary
     judgment based on implied license/patent exhaustion, including the declaration
     submitted therewith;

(j)  working with three expert witnesses – Robert Pushaw, Robin Delaney, and Charlie
     Van Horn;

(k)  working with one expert witness (Frederic Wilson) on his opinions that were arguably
     relevant only to Salomon's invalidity case. Mr. Wilson also rendered opinions
     concerning the noninfringement of the accused products.  [Salomon indicates that a
     portion of the fees and expenses incurred working with Mr. Wilson are still
     included.];

(l)  reviewing 33 boxes of documents produced by Outlast, which was one of the two
     suppliers of the allegedly infringing three-layer composites identified in the
     Complaint;

4

(m) miscellaneous work on other issues that arguably were not relevant to Baychar's

infringement contentions (*e.g.*, research and analysis into whether Baychar's failure

to prosecute the case provided the basis to dismiss the case).

(<u>Id.</u> at 2-3.)  According to Salomon, the exclusion of these several tasks reduces its request by

over $350,000.

On top of these reductions, Salomon has excluded the fees and expenses associated with

the appeals.  It reports doing so "in light of the Court's decision that Baychar's appeal did not

provide a basis for finding the case exceptional."  (<u>Id.</u> at 3.)

Next, Salomon reports that it is seeking only a quarter of the fees and expenses associated

with Holland & Hart's work on the non-infringement defenses.  It has done so because Holland

& Hart's non-infringement work benefitted a number of defendants in litigation pursued by the

Baychar plaintiffs.  Many of the Holland & Hart invoices pertaining to merits work,

consequently, have fee requests significantly reduced in relation to the number of hours actually

expended, because the fees have been divided by four to reflect that Salomon did not actually

bear the full expense of Holland & Hart's work.

The final way in which Salomon has sought to comply with the Court's order is by

multiplying "the remainder of the fees and expenses (after deducting all of the fees and expenses

noted above)" by 20/22 (or 91%), to account for the fact that the infringement claims were

vexatious to the extent of 20 of the 22 products.  (<u>Id.</u> at 5; Second Hartley Decl. ¶ 15, Doc. No.

184.)  Salomon confesses that it has taken this approach because its billing records do not permit

a product-by-product differentiation of attorney time and expenses according to each of the 22

products.  Salomon asserts that its counsel could not reasonably "identify the amount of time

spent addressing Baychar's infringement contentions with respect to each individual product."

(Def.'s Supp. Mem. at 6;  Second Hartley Decl. ¶ 16.)

With these reductions in place,[3] Salomon adds on top of this the time and expenses incurred from Holland & Hart's and Goodwin Proctor's representation on the motions for attorney fees and expenses.  Unlike its request in relation to merits work, Salomon's request for fees work does not involve any reduction to account for multiple parties' sharing the bill.  Nor does Salomon apply its reductive factor of 0.91 to any of the fee work.  (Id. at 7.)  Salomon arrives at a total request of $247,122.87, which is roughly 36% of its original request of $691,671.17.

Salomon's presentation on hourly rates is as follows, giving rates in ranges that increase over the course of the litigation:

Holland & Hart counsel

James E. Hartley:  $400-515

Donald A. Degnan:  $350-435

Elizabeth Phelan:  $365-375

Lee F. Johnston:  $295-320

Misc. Associates:  $165-335

Paralegal and other staff (notably Ms. Hall):  $90-165

(First Hartley Decl. ¶ 48.)

Testa Hurwitz / Goodwin Proctor counsel

Douglas J. Kline:  $600-$750

---

[3]      There is an additional reduction of $3,914.66 arising from the Baychar plaintiff's agreement to reimburse certain expenses.  (Def.'s Supp. Mem. at 6-7.)

Christopher W. Stamos:  $475-$685

Andrew Jagenow:  $275-$535

(Stamos Decl. ¶ 15.)

Holland & Hart lead counsel James Hartley attests as follows concerning the

reasonableness of Holland & Hart's rates:

> [T]he rates of the Holland & Hart timekeepers are within the range of prevailing
> charges for like work, taking into account the patent law expertise needed for a
> case of this size and complexity.  In my opinion, the time charged and the fees
> billed to Salomon was reasonable and necessary in light of the nature of this
> proceeding and the experience of the attorneys and paralegals involved.  The fees
> and costs incurred by Salomon were particularly reasonable because, by virtue of
> Holland & Hart's representation of four defendants in these cases, the cost of
> much of the work in this case was effectively shared among Salomon, Burton,
> Deckers, and Nordica.  If Salomon had not been able to share these costs with
> three other entities, Salomon's cost of defending this action would have been
> substantially higher, perhaps as much as three or four times higher.

(Second Hartley Decl. ¶ 11, Doc. No. 184.)  More description of these timekeepers and the total

hours they worked is afforded in Hartley's original declaration.  (Doc. No. 170 ¶ 54.)

Goodwin Proctor lead counsel Douglas J. Kline attests:

> I have carefully reviewed the files and the time records maintained by both firms
> for its attorneys and other personnel in connection with our work on this case.  In
> my opinion, the time charged and the fees billed to Salomon are reasonable in
> light of the nature of this proceeding and the experience of the attorneys and
> paralegals involved.

(Kline Decl. ¶ 18.)  Additionally, Attorney Kline's partner, Christopher W. Stamos, has

submitted a declaration in support of the supplemental memorandum on fees.  Attached to that

declaration is an Attachment A that summarizes 48 pages of attached invoices.  (Stamos Decl.,

Doc. No. 183-2.)  Entries prior to November 14, 2008, are multiplied by 0.91 to account for the

7

two of 22 product claims that were colorable.  Entries after that date are not reduced and mostly relate to Salomon's motion for fees.[4]  (Id. at 7-8.)

### THE BAYCHAR PLAINTIFFS' OPPOSITION

The Baychar plaintiffs argue that Salomon has not properly limited its claim for attorney fees to the time expended in defense of the twenty products at issue.  They say it is false to suggest that 91% of the attorney time spent on the non-infringement issue was addressed to those twenty products, 18 of which did not contain phase change materials, rather than the remaining products that did have this essential element of the patent claim.  They assert that Salomon focused its summary judgment statement of material facts and its memorandum on only four products containing phase change materials and devoted most of its energy to the two Bonfire products.  (Mem. in Opposition at 3, Doc. No. 189.)  With respect to all of the remaining products, they observe that Salomon only ever referred to those products in passing, with a simple statement that they could not infringe for want of any phase change materials.  (Id.)  The Baychar plaintiffs take the position that "no reasonable person could possibly believe that Salomon's counsel spent 91% of their time defending those twenty products from infringement allegations."  (Id. at 3-4.)  They argue that only a strict lodestar methodology is appropriate and that Salomon has failed to carry its burden of demonstrating what a fair loadstar calculation would be.  (Id. at 5.)  They state that the Court "must determine how many hours Salomon actually spent on defending infringement as to those twenty products, instead of simply accepting Salomon's blanket and unreasonable statement that it can't do any better."  (Id. at 6.)

---

[4]      Some of the earlier invoices concern attorney fees as well.  (See, e.g., Feb. 20, 2007, Invoice No. 610403, Doc. No. 183-2 at 25-28.)

More specifically focused on the lodestar computation, the Baychar plaintiffs argue:  that the lodestar rate for counsel's hourly fees must be set by the local, Maine market (id. at 6-7);  that the affiants must address the relative experience level of each attorney who billed time to this case (id. at 7);  and that any award should at least be "sanctioned" (reduced) for Salomon's failure to properly support a lodestar calculation (id. at 8).

The Baychar plaintiffs also oppose a number of specific billings, arguing that the work would have occurred even in the absence of the exceptional claims or suggesting that the billings cannot be critically evaluated due to vague, block billed entries or are unacceptable because a lead attorney billed large amounts of time to non-core tasks.  (Id. at 8-9.)

Finally, the Baychar plaintiffs object to Salomon's request for attorney fees for both the Holland & Hart attorneys and the Goodwin Proctor attorneys, arguing that it was not reasonable to hire separate counsel to review the work of Holland & Hart attorneys and to pay them lead counsel rates.  They ask that all of the fees of supervisory counsel be excluded from any award. (Id. at 10.)

### DISCUSSION

The following discussion addresses each of the major points of contention (hourly rates, fees on fees, and what factor to apply to account for the infringement-related work for only the identified 20 products) before wading through the many invoices most recently offered in support of the motion.  The affidavits outlined above, and the invoices offered as exhibits, are adequate to permit a calculation using the lodestar approach.  However, the calculation I ultimately arrive at is substantially less than what is requested in Salomon's supplemental briefing.  This arises, in large part, from my decision to apply a 0.5 reductive factor to the merits work, rather than the 0.91 factor suggested by Salomon, and from my decision to apply the 0.91

9

reductive factor to the fees on fees work engaged in by Salomon's counsel.  The award is also reduced to an extent by the fact that I exclude a number of time entries in the course of my slow march through the invoices.  Additionally, I have applied a 25% reduction to the hourly rates of Goodwin Proctor counsel in order to bring their rates in line with Holland & Hart rates.

Although the recommended award bears little resemblance to the request, the structure of this Recommended Decision is based entirely on the structure of the request.  With respect to the Holland & Hart fees, I worked directly from "Exhibit 1—Summary of Legal Fees" (Doc. No. 185), cross-referencing each individual invoice (Doc. No. 182).  At the end of each invoice Salomon's counsel has boxed in the requested fees and indicated the manner of computation. Using their rates, but my own time allowances and my own factor, I calculated what I allowed in relation to each invoice.  Similarly, with respect to the Goodwin Proctor fees, I worked from "Attachment A" (Doc. No. 183 at 7-8), cross-referencing each individual invoice (also at Doc. No. 183).  Finally, I considered attorney expenses using "Exhibit 4" to the Hartley Declaration (Doc. No. 186).

**A.  Hourly rates**

I agree with Salomon that the payment of non-local rates for patent counsel is not unreasonable in this patent case.  Howes v. Med. Components, Inc., 761 F. Supp. 1193, 1195 (E. D. Penn. 1990).  However, although I believe it was reasonable for Salomon to accept the rates charged by Colorado counsel at Holland & Hart, I am not persuaded by Salomon's presentation that it was reasonable to pay considerably higher fees (as high as $750/hour) to the Goodwin Proctor counsel in Boston who were retained primarily to monitor the work of Holland & Hart counsel.  I conclude that their rates should be reduced by 25 percent, to bring them into line with

10

the Holland & Hart rates.  In all other respects I find that the presentation on hourly rates is sufficient to support a lodestar computation.

### B. Fees on fees

Courts do not uniformly allow fee applicants to recover fees for the time attorneys spend on a fee application.  Generally, however, a reasonable fee is awarded for time spent on the fee application.  Time spent on a fee application is generally reduced to account for lack of success on underlying claims.  Where a proportion of the underlying work on the merits has been excluded from a fee award, it is within the Court's discretion to correspondingly reduce the time spent on a fee application.  See, e.g., ICU Med., Inc. v. Alaris Med. Sys., 2007 U.S. Dist Lexis 49094, *13-14 (C.D. Cal. June 28, 2007) (applying such a rule with a section 285 fee award); Boehner v. McDermott, 541 F. Supp. 2d 310, 325 (D. D.C. 2008) (observing that fees on fees must be reasonable);  Laube v. Allen, 506 F. Supp. 2d 969, 992 (D. Ala. 2007) (reducing award for fee work by the same percentage that the merits work was reduced by);  Or. Natural Desert Ass'n v. Gutierrez, 442 F. Supp. 2d 1096, 1102 (D. Or. 2006) (same).[5]  I therefore reject Salomon's contention that the time spent on the motion for fees should not be reduced.  Although Salomon certainly was successful on the merits, the motion for attorney fees was predominantly rejected by the Court.  Additionally, a fair piece of Salomon's work on the motion for fees relates to repetitive filings and updated exhibits designed to account for time spent on the appeal and post-judgment settlement efforts.  The Court declined to find this portion of the litigation to be vexatious.  One way to look at it is that Salomon has, in the wake of the order granting only a

---

[5]     The Federal Circuit does not object to an award of fees on fees, as Salomon points out.  Mathis v. Spears, 857 F.2d 749, 756 (Fed. Cir. 1988).

partial fee award, reduced its fee request to 36% of its original request, so its request for fees on fees might be reduced correspondingly, though that is not the approach I have taken.

### C. The 0.91 Factor

Salomon proposes that the best way to apportion its fees to account for the 20 vexatious products is to apply a multiplier to all of its invoices that relate to merits work. Salomon chose a multiplier of 0.91 (20/22) because 20 of 22 products justified the award. (Def.'s Supplemental Mem. at 5.) Salomon argues that there is no better way to account for this scenario because "[n]o timekeeper (attorney or paralegal) has the time or the need to record time with the specificity required to apportion time spent addressing infringement contentions [among] twenty-two products." (Id.) The Baychar plaintiffs argue that this ratio does not accurately reflect the amount of time Salomon's counsel spent on the 20 products, pointing to Salomon's non-infringement motion as evidence that Salmon quickly discounted 18 of the products because of an absence of a foam layer containing phase change materials. (Pl.'s Opposition at 3, Doc. No. 187, referencing Doc. Nos. 53, 54 and 87.)

I agree with the Baychar plaintiffs that the 0.91 factor does not accurately reflect the proportion of time expended on account of these 20 vexatious products at the summary judgment stage. It is silly to suggest that only 9% of Salomon's effort would have been directed to the two products that generated the only colorable claims of infringement. On the other hand, at the discovery stage of the case it is not hard to imagine that these other products did consume a significant amount of counsel's time. Still, when you consider the following account included in the Court's order on fees, it is questionable how much discovery work would have been taking place in this case in relation to the 20 vexatious products after the issuance of the plaintiff's expert report:

12

Salomon provided Baychar with Salomon's president's sworn testimony that twenty of the twenty-two accused products did not contain phase change materials, Decl. of James Curleigh, No. 04-136-B-C (Apr. 5, 2005) (Ex. 12 to Decl. of James E. Hartley in Support of Salomon's Mot. for Att'ys' Fees) (Docket Item 126-14), an essential element of the '810 Patent, Frisby Tech., 230 F. Supp. 2d at 83-84. Baychar did not come up with any contrary evidence; instead, Baychar's expert did not even address the twenty non-infringing products in his opinion, stating only that the *other* two Salomon products were technically described in the '810 Patent. Decl. of G.A.M. (Tony) Butterworth, No. 04-136-B-C, at 5 (June 24, 2005) (Ex. 10 to Hartley Decl. in Support of Salomon's Mot. for Att'ys' Fees) (Docket Item 126-12).

As this excerpt reflects, Salomon had already determined that the 20 products did not contain phase change materials prior to the issuance of plaintiffs' expert report. How much of Salomon's subsequent discovery work could reasonably have related to these 20 products? They would have been addressed in subsequent depositions, no doubt, but not to the extent of 91% of the time expended. Unfortunately, Salomon only advocates a 0.91 factor based on the ratio of vexatious products:all products. It does not offer any discussion about why it would be fair to assume that it spent 91% of its time on products that so clearly did not embody an essential element of the claim.

In my view, the best approach is to apply two different factors for merits work and attorney fee work. With respect to merits work, I will apply a factor of 0.5 because I find that that factor will more likely result in the kind of apportionment the Court had in mind. Although it is probably overstating it to find that half of the merits work went toward products that clearly lacked an essential element of the patent claim, I conclude that the 0.5 factor is fair when one considers the other substantial reductions I have made in the course of my review. However, with respect to fees on fees work, I will apply the 0.91 factor because, with respect to the effort to recover fees, the fact that 20 of the 22 products in question were vexatious infringement claims is precisely the point of the award.

13

**D. Fees**

There are two sets of invoices related to the motion for fees, one set from Holland & Hart and another from Goodwin Proctor.  I record my conclusions about each of the invoices in the sections that follow.  Those invoices to which Salomon has already applied its 0.91 factor have been further reduced by applying a factor of 0.5494, to arrive at a total reductive factor of 0.5 (actually 0.499954).  Those invoices that pertain to fees on fees work have been reduced by applying a factor of 0.91.

**1.   The Holland & Hart Invoices**

The Holland & Hart portion of the fee application is supported by 25 invoices related to merits work and another six invoices related to fees on fees work.  The fee award requested for Invoices 677145 through 757516 (merits work) amounts to $103,638.24.  The fee award requested for Invoices 774170 through 895437 (fees on fees) amounts to $80,406.00.  Although there would appear, at first blush, to be an incongruity here, the fees on fees work is particularly high in relation to the merits work because much of the merits work has been reduced substantially to account for the fact that other defendants were sharing three-quarters of the bill through Invoice 713704 and the 0.91 factor was also applied to all of the merits work, through Invoice 757516.

*a.   Invoices 677145, 677220, and 681073*

All of this requested time is allowed.  Applying the 0.5494 factor yields a total award of $2,287.42.

|         |           |
|---------|-----------|
| 677145: | $478.08   |
| 677220: | $488.71   |
| 681073: | $1,320.63 |

### b. _Invoice 681075_

The Baychar plaintiffs object to time billed by Mr. Hartley for travel to Bangor to attend the Baychar deposition and a settlement conference in July of 2005 on the ground that this time would have been expended even if the plaintiffs had not continued to pursue the vexatious claims.  (Opposition Mem at 8, referencing Doc. No. 182 at Bates No. HH0012.)  The invoice reflects that on July 11, 2005, Mr. Hartley billed 12.8 hours for:  "Travel to Portland and drive to Bangor; review documents and prepare for Baychar deposition en route;  conference with Mr. Edwards;  ongoing preparation for settlement conference."  On July 14, he billed 9.3 hours for: "Return to Denver, work on case analysis and schedule en route."  I do not dock this time because Mr. Hartley reports working on the case during his travel time.  Travel expenses will be excluded in the subsequent section on attorney expenses.  All of the time is allowed.  Applying the 0.5494 factor to the requested amount yields a total award of $4,022.14.

681075:          $4,022.14

### c. _Invoices 690633, 690641, 695879, and 695882_

These invoices reflect significant discovery effort, none of which appears excludable.  All of this time is allowed.  Applying the 0.5494 factor yields a total award of $13,527.65.

| | |
|---|---|
| 690633: | $4,683.53 |
| 690641: | $1,955.07 |
| 695879: | $837.61 |
| 695882: | $6,051.44 |

### d.  Invoices 700306, 700307

These invoices cover the end of the discovery period and the commencement of dispositive motions.  All of the time is allowed.  Applying the 0.5494 factor yields a total award of $379.84.

|        |          |
|--------|----------|
| 700306: | $309.85 |
| 700307: | $69.99  |

### e.  Invoice 704638

This invoice addresses dispositive motion work and efforts by Baychar's new counsel to extend the discovery deadlines.  I would exclude 0.40 hours of time billed by Mr. Kinnear on December 15, 2005, for his review of the web bios of the plaintiffs' new counsel, but it appears that Salomon failed to include this time entry in its computation for this motion.   (See Holland & Hart Invoices at HH0063.)  All of the requested time is allowed.  Applying the 0.5494 factor yields a total award of $1,783.21.

|        |            |
|--------|------------|
| 704638: | $1,783.21 |

### f.  Invoice 704639

Salomon has reduced this invoice to three time entries by Mr. Degnan, primarily to communicate with "Salomon's counsel" (Goodwin Proctor counsel) about the plaintiffs' acquisition of new counsel, but also including correspondence to another defendant's counsel (Decker's) and "research" into the firms that "potentially may represent Baychar."  I exclude these billings because I fail to understand the significance of the work effort reported here.  There are no other billings in Salomon's fee request related to this particular month and a look at

16

the docket in mid-December 2005 does not suggest that $1,694.42 in additional fee-shifting is warranted.

704639:    $0

 

g.  *Invoice 711275*

The requested time for discovery work is allowed.  Applying the 0.5494 factor yields a total award of $2,452.27.

711275:    $2,452.27.

 

h.  *Invoice 711282*

This invoice incorporates time entries for January 2006, when discovery was approaching the February 6 deadline and when Salomon was beginning to prepare its summary judgment motion on non-infringement in anticipation of a February 13 deadline.  (See Doc. No. 46 for deadlines).  It is apparent that Salomon has significantly whittled down the entries in this invoice to account for the Court's limited fee award.  The Baychar plaintiffs have not objected to any particular entries in this invoice.  I note that Mr. Hartley and Mr. Johnson both prepared for and attended the deposition of Ms. Baychar between January 23 and January 25, but I have not excluded any of this time, finding it reasonable for both attorneys to prepare for this important deposition.  All of the requested time is allowed.  Applying the 0.5494 factor yields a total award of $6,356.55

711282:    $6,356.55.

17

### i.   Invoice 713704

This request related to this invoice for February 2006 records primarily summary judgment effort through the February 13 filing deadline.  I have excluded a portion of the time for entries in which attorneys refer to work on multiple motions, without limiting the request to account exclusively for time spent on the non-infringement motion.  I recognize that the request already accounts for the presence of multiple defendants and, therefore, multiple motions in that sense, but it is not apparent that additional reductions have been applied to block billings for undifferentiated summary judgment work or trial preparation work related to all legal issues, including the obviousness and implied license/exhaustion issues.  I exclude 1.5 hour of Mr. Hartley's time ($156.98), 3 hours of Mr. Degnan's time ($259.35), and 15 hours of Ms. Hall's time ($511.88).  Using the figures supplied by Salomon, the request is reduced to $2,203.91. Applying the 0.5494 factor yields a total award of $1,210.83.

713704:       $1,210.83.

### j.   Invoice 713706

This invoice concerns work performed in the same timeframe as the prior invoice, only the client identified is Outlast Technologies rather than Goodwin Proctor.  For the same reason given for the prior invoice, I exclude 3 hours of Mr. Degnan's time ($1,037.40) and 1 hour of Ms. Hall's time ($136.50).  Using the figures supplied by Salomon, the request is reduced to $7,114.38.  Applying the 0.5494 factor yields a total award of $3,908.64.

713706:       $3,908.64.

### k.   Invoices 720230 and 720248

18

Like the prior two invoices, these two invoices cover the same month (March 2006) and are billed to Goodwin Proctor and Outlast, respectively. From Invoice 720230 I exclude 1 hour billed by Mr. Hartley on March 22, 2006, for a conference with Mr. Farley, whose own time entry on that date exclusively reflects work on Salomon's reply to the anticipation issue (all of which Salomon has excluded from its supplemental request). Beyond that solitary hour, I exclude the following additional time from Invoice 720230 for the reason stated in relation to the exclusions I made concerning Invoices 713704 and 713706. For time entries made March 28, 2006, on invoice 720230, I exclude 1.5 hours of Mr. Hartley's time ($51.19), 1.5 hours of Mr. Degnan's time ($129.68), 3 hours of Mr. Farley's time ($191.10), and 1 hour of Ms. Hall's time ($34.13).

All of the time requested in Invoice 720248 is allowed. Using the figures supplied by Salomon, the allowed portions come to $2,179.45 and $657.02. Applying the 0.5494 factor yields a total award of $1,558.36.

|  |  |
|---|---|
| 720230: | $1,197.39 |
| 720248: | $360.97 |

### l.   Invoice 725389

All of the requested time entries are allowed. Applying the 0.5494 factor yields a total award of $1,024.41.

|  |  |
|---|---|
| 725389: | $1,024.41. |

### m.  Invoice 726181

The requested entries include work in March 2006 on the non-infringement motion. I exclude the entries made by Mr. Farley because it appears likely that he was not primarily tasked

with drafting the reply brief on non-infringement, given the level of effort Mr. Degnan put into that task.  Although Mr. Farley appears to have performed work on all of the reply briefs, I find that the exclusion of this amount of time is sufficient to account for any partial reduction I would otherwise need to make to the entries of other timekeepers for their efforts in relation to the non-included motions.  Using Salomon's figures, this invoice is allowed to the extent of $9,166.38. Applying the 0.5494 factor yields a total award of $5,036.01.

726181:       $5,036.01.

### n.  *Invoice 735205*

This invoice moves us ahead to May 2006.  The requested entries relate to counsel's review of the plaintiffs' surreply, which is addressed to all of the pending summary judgment motions (Doc. No. 91).  Half of the plaintiffs' effort in that regard appears to have gone toward the issue of whether she proved infringement.  I exclude half (0.85 hours) of Mr. Degnan's time. The other entries relate to a request for oral argument on the pending motions (Doc. No. 92). The number of hours requested for work on the request for oral argument is excessive.  A review of the motion for oral argument reflects that the number of hours likely stemmed from an inappropriate effort to make unauthorized factual presentations or arguments in the wake of the plaintiffs' summary judgment surreply.  I exclude all but 1 hour of Mr. Farley's time for attorney effort expended on the motion for oral argument.  Using Salomon's figures, the allowed portion of this request comes to $137.18.  Applying the 0.5494 factor yields a total award of $75.37.

735205:       $75.37.

### o.   *Invoice 738417*

Mr. Hartley's time to review and circulate the Recommended Decision on the summary judgment motions is allowed.  The remaining entries related to the Burton case are not.  Using Salomon's figures, the allowed portion of this request is $136.05.  Applying the 0.5494 factor yields a total award of $74.75.

738417:      $74.75

### p.   *Invoices 738418 and 743477*

Invoice 738418 covers the same July 2006 time period as the prior invoice, but it is billed to Outlast rather than Goodwin Proctor.  Counsel report being engaged in an analysis of the Recommended Decision (Doc. No. 94).   Invoice 743477 addresses August work in relation to the objections to the Recommended Decision and opposition to the plaintiffs' request for oral argument.

I exclude half of these requests to account for duplicative review, the fact that these time entries relate to more than just the non-infringement issue, and excessive attention to the request for oral argument.  Using Salomon's figures, the allowed portion of these requests is $6,716.71.  Applying the 0.5494 factor yields a total award of $3,690.16.

738418:      $344.47
743477:      $3,345.69

### q.   *Invoice 757516*

The limited entries in this invoice come in the wake of the Court's adoption of the Recommended Decision and the initiation of Salomon's attention to the recovery of attorney

fees.  The request is denied because this limited time would have been spent on the identified tasks even in the absence of the vexatious products.

757516:       $0

### r. *Invoice 774170*

With invoice 774170, the work effort shifts overwhelmingly toward the quest to recover attorney fees.  I allow all of the time requested up through January 16, 2007, the initial filing date of the motion for fees.  Using Salomon's figures, this results in a partial award of $38,700. Because this is fees on fees work, I apply the 0.91 factor to these invoices, which results in a total award of $35,217.

774170:       $35,217

### s. *Invoice 779983*

The time requested here relates to March 2007 work by Mr. Farley to research, draft, and edit the motion for fees.  (Doc. No. 138.)  The resubmission of the motion arises from the fact that the initial motion was filed while an appeal was pending with the Federal Circuit.  I disallow this time because I find it more likely than not that this additional time was spent updating the motion to claim fees for work performed in the intervening months, rather than for work that would be compensable under the Court's fee award.

779983:       $0

### t. *Invoice 870232*

After more than a year's hiatus, this invoice records time spent in July 2008 "reviewing" and "continuing" the motion for fees and related research prior to submission of the fee motion

22

for the third time on August 8, 2008 (Doc. No. 169).  I find that this effort more likely than not was exerted in order to update the fee request to account for the appeal and settlement discussions between the parties.  Because the Court concluded that the appeal and settlement work does not justify a fee shifting award I disallow this request.

870232:        $0

### u.  Invoice 875272

All entries in this invoice are excluded for the reason given in regard to the prior invoice.

875272:        $0

### v.   Invoice 883606

This invoice relates to preparation of a reply brief, filed September 8, 2008 (Doc. No. 178).  Despite the repetitive submission of the fee motion, this is the first instance in which Salomon filed a reply brief on the fee motion.  I cut this request by half to account for the intervening appeal and the briefing on issues unrelated to the non-infringement defense.  The other half is allowed because Salomon is entitled to file a reply brief in support of its motion.  Accordingly, I have allowed $6,190.75.  Applying the 0.91 factor yields a total award of $5,633.58.

883606:        $5,633.58

### w.  Invoice 895437

This final Holland & Hart invoice pertains to work performed in November 2008 in the wake of the Court's order on the motion for fees.  Predominantly, Salomon's counsel researched

23

and considered how to go about supplementing their fee request to comply with the limited

award granted by the Court.  This work was reasonably necessary for the fee effort and I include

in this award the requested amount of $7,864.00.  Applying the 0.91 factor yields a total award

of $7,156.24.

895437:        $7,156.24

### 2.   The Subtotal of Holland & Hart Fees

The attorney fee subtotal for the Holland & Hart Invoices comes to $95,394.43.

### 3.   The Goodwin Proctor Invoices

The Baychar plaintiffs argue that none of the fees paid by Salomon to Goodwin Proctor

counsel should be factored into the Court's award because it was not reasonable for Salomon to

retain two firms to represent it in this case, especially where one firm was simply supervising the

work of another.  I agree with Salomon that its retention of attorneys from two separate law firms

does not necessarily mean that the work of one firm should be categorically excluded.  In the

abstract, the use of multiple firms is no more objectionable than the use of multiple attorneys.

Bowman v. Pulaski County Special Sch. Dist., 723 F.2d 640, 646 (8th Cir. 1983).  The question

is whether there is actually duplication of work effort.  Poy v. Boutsellis, 352 F.3d 479, 490 (1st

Cir. 2003).

Salomon argues that the money it expended on Goodwin Proctor counsel was reasonable

because Holland & Hart was representing multiple defendants in litigation brought by the

Baychar plaintiffs and Salomon desired counsel who would ensure that its interests were not

overlooked in any respect.  Although I can appreciate that concern, the record reflects that

Holland & Hart performed very well, without any apparent need for intervention.  Furthermore,

24

it is not apparent from the Goodwin Proctor invoices how this supervisory role came into play other than in the context of the time Goodwin Proctor counsel spent reviewing the parties' motion papers and the Court's orders and conferencing with Holland & Hart counsel and each other about the same.  I am not going to include in this recommended award all of the time in which multiple attorneys at *two* firms engaged in conferences and communication related to the same topics just because Salomon characterizes Goodwin Proctor counsel as "supervisory" counsel.  To the contrary, because Goodwin Proctor's role was less essential to the litigation, the exclusions for such redundancies fall on the Goodwin Proctor invoices rather than the Holland & Hart invoices.

### *a.   Invoices 531740 and 535658*

The records reflect that Goodwin Proctor counsel engaged in some auxiliary discovery work (*e.g.*, coordinating Salomon's discovery responses and developing strategy for Salomon's Rule 30(b)(6) deposition) between September and October of 2005, which discovery effort does not appear to be duplicative of the more wide-ranging discovery work engaged in by Holland & Hart counsel in that timeframe.  (Compare Goodwin Proctor Invoices 531740 & 535658, Doc. No. 183 at 10-17, with Holland & Hart Invoice 690633, Doc. No. 182 at 23-28.)  Although there is some conferencing among counsel, it does not appear that the fee request is exceptional in that regard.  Notably, Salomon has excluded most of the conference time in this invoice.  I do not exclude any time from the first two Goodwin Proctor invoices listed on Attachment A of the Stamos Declaration.  The allowed fees for each invoice are $3,297.73 (Invoice 531740) and $5,231.81 (Invoice 535658).  These figures reflect Salomon's application of its factor of 0.91.

Applying a further factor of .5494 to achieve a total reductive factor of 0.5, yields a total award of $4,686.13.

|  |  |
|---|---|
| 531740: | $1,811.77 |
| 535658: | $2,874.36 |

### b.   Invoices 577997 and 599398

After the discovery work, there is a gap in the Goodwin Proctor invoices until August of 2006.  The invoices for August and for the rest of 2006 relate to counsel's review of the Report and Recommended Decision (Doc. No. 94) and the subsequent Order Affirming the Recommended Decision (Doc. No. 101) on the summary judgment motions.  Salomon does not seek fees for Goodwin Proctor counsel's review or supervision of Holland & Hart's summary judgment effort, which reinforces the point that such time is only duplicative of the effort of competent counsel at Holland & Hart.   Instead, Salomon asks that it be compensated for the time Goodwin Proctor counsel spent reviewing the court orders in question, discussing them with one another, and communicating with Salomon's litigation representative (Ms. Laurent) concerning the same.   (Doc. No. 183 at 7 (Attach. A) & 18-24 (Invoices 577997 & 599398).)  A reference to the Holland & Hart invoices reflects that counsel there were also reviewing the Court's decisions and discussing them with one another, except not communicating directly with Ms. Laurent.  (Doc. No. 182-3 at 41, 49.)  I exclude all of the Goodwin Proctor time from these two invoices except 0.2 hours of Mr. Kline's time from Invoice 577997 and 0.4 hours of Mr. Stamos's time from Invoice 599398, which accounts for reasonable time spent communicating with the client.  The allowed portion is $309.40.  Applying the 0.5494 factor yields a total award of $169.98.

26

| | |
|---|---|
| 577997: | $59.99 |
| 599398: | $109.99 |

### c.   Invoice 610403

The next Goodwin Proctor invoice concerns work performed in 2007.  Starting in January of 2007, Goodwin Proctor counsel focused their energies on Salomon's motion for attorney fees, filed on January 16, 2007.  (Doc. No. 122.)  Indeed, by the 16th of January, Goodwin Proctor counsel billed in excess of $10,000 on the attorney fee issue.  (Doc. No. 183 at 26-28 (Invoice 610403).)  This is on top of over $52,000 in billings by Holland & Hart counsel who performed most of the work associated with the motion.  (Doc. No. 184-2 at 2-7.)  Despite the sum, the amount of time claimed for purposes of the motion for fees is not excessive.  The exclusions already applied by Salomon reduce the Goodwin Proctor fees for Invoice 610403 to $5,406. (Doc. No. 183 at 7 (Attach. A).)  Moreover, Goodwin Proctor counsel did have to attend to the declaration that Mr. Kline submitted on behalf of the motion (Doc. No. 126-18.).  Nevertheless, there is a lot of conferencing going on among all of these attorneys.  I strike an hour of Mr. Stamos's time to account for duplicative conferencing (1 x $550/hr).  Additionally, Goodwin Proctor represents that Andrew Jagenow spent 2.2 hours in an office conference with Mr. Stamos on January 16, 2007.  I strike two hours of Mr. Jagenow's time (2 x $405/hr).  The allowed fees from this invoice come to $4,046.  Salomon did not apply a reductive factor to Goodwin Proctor's fees on fees work.  Applying the 0.91 factor yields a total award of $3,681.86.

| | |
|---|---|
| 610403: | $3,681.86 |

### d.  *Invoices 626632, 631006, 679462, and 704137*

The next Goodwin Proctor Invoice corresponds with the re-filing of the motion for fees

on April 2, 2007, due to the fact that the original motion was prematurely filed while an appeal to

the Federal Circuit was pending.  This invoice and the three that follow it are all excluded as

unproductive and duplicative.  It is understandable that there would be communication and

discussion about re-filing and about the timing of the motion, which was entered on the docket

three times prior to the current supplementation, but there is an inherent duplication of effort that

arises only because Salomon chose to route communications through a second law firm.

|         |      |
|---------|------|
| 626632: | $0   |
| 631006: | $0   |
| 679462: | $0   |
| 704137: | $0   |

### e.  *Invoices 710847, 717725, and 722999*

The efforts of Goodwin Proctor counsel in relation to the fee application intensified

somewhat in July and August of 2008, prior to the third presentation of the motion on August 8,

2008 (Doc. No. 169).  It appears that this effort was predominantly addressed to modifying the

prior motion for fees in order to recover additional fees related to the Baychar plaintiffs' appeal

and Goodwin Proctor's work on a final effort to settle the litigation before the Chief Mediator of

the Federal Circuit.  (Compare Hartley Decl. (Doc. No. 139) with Hartley Decl. (Doc. No. 170).)

Neither of these aspects of the litigation has justified a fee award.  Additionally, it appears that in

September 2008 Goodwin Proctor counsel performed some redundant work in relation to

Salomon's reply brief on the motion for fees.  (Doc. No. 183-2 at 22 (Invoice 722999).)

Presumably, Goodwin Proctor counsel had something extra to contribute to the renewed motion

for fees because they had served in the mediation effort at the Federal Circuit, but that effort did

28

not justify the fee award.  I exclude the time reflected in the Goodwin Proctor invoices for this entire time period.

| | |
|---|---|
| 710847: | $0 |
| 717725: | $0 |
| 722999: | $0 |

### f.   Invoice 735283

Finally, the last Goodwin Proctor invoice submitted in support of the motion for fees arises from time counsel spent after I issued the order to supplement the attorney fees motion on December 1, 2008.  The billings relate to communications with the client, office conferences, and attention to the motion, revised declarations, and a spreadsheet of fees.  (Doc. No. 183-2 at 24-27 (Invoice 735283).)  This work was, by and large, necessary to finalize the motion for fees, but there is also a lot of duplication of effort on account of the level of conferencing going on among counsel from the two firms.  I exclude all of the time in this last invoice to account for duplication of effort, except for Mr. Jagenow's time entries.  It is apparent that Mr. Jagenow performed the review needed to support the supplemental briefing with respect to fees.  His entries for office conferences and client communications are allowed as well.  The billings made by Mr. Stamos, the only other timekeeper on this invoice, are excluded to account for the fact that Holland & Hart counsel also billed for this collective effort.  Mr. Jagenow's allowed time amounts to $6,794.50.  Applying the 0.91 factor yields a total award of $6,183.00

| | |
|---|---|
| 735283: | $6,183.00 |

### 4.   The Subtotal of Goodwin Proctor Fees

The gross allowed Goodwin Proctor fees is $14,720.97.  This amount is further reduced by 25% to bring the significantly higher hourly rates of Goodwin Proctor counsel into parity with

the rates charged by Holland & Hart counsel, who not only performed more than adequately but also performed all of the more demanding work in this litigation.  The net award for the Goodwin Proctor fees is $11,040.73.

### E.  Total Fees Awarded

For the reasons set forth in the body of this Recommended Decision, I recommend that the Court award Salomon $95,394.43 on the Holland & Hart Invoices and $11,040.73 on the Goodwin Proctor Invoices.  The total, $106,435.16, is a reasonable assessment of the attorney fees unnecessarily incurred by Salomon as a consequence of the Baychar plaintiffs' failure to voluntarily dismiss infringement allegations against 20 products that so clearly did not contain an essential element of the patent claim.

### F.  Litigation Expenses

The attorney fee provision of the Patent Act, 35 U.S.C. § 285, permits a District Court, in exceptional cases, "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."  Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983).  These "outlays" include "those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit."  Id.  As it sounds, this permits an award of more than just fees.  The award includes "disbursements that were necessary for the case."  Lam, Inc. v. Johns-Manville, 718 F.2d 1056, 1069 (Fed. Cir. 1983).  Section 285 thus permits an award of expenses beyond the mere taxation of costs.[6]  Maxwell v. Angel-Etts of Cal., 53 Fed. Appx. 561, 569 (Fed. Cir. 2002) (unpublished).  I assume that the Court was inclined to award some expenses, provided that there is evidence that particular expenses were

---

[6]        Salomon represents that costs awarded in the Bill of Costs have been excluded from its request.

tied specifically to the plaintiffs' persistence with the 20 vexatious product claims.  Expenses that Salomon would have incurred even in the absence of those claims fall outside the rationale of the Court's Order.

Salomon seeks to recover fees consisting of "expert witness fees, costs of attorney attendance at depositions and court proceedings, and computerized research and PACER charges."  (Def.'s Supplemental Mem. at 6-7.)  In addition, Salomon seeks the expenses associated with its research and drafting of its motion for attorney fees and expenses.  (Id. at 7.)  The Declaration of James Hartley offers the following concerning the expenses generated by Holland & Hart attorneys:

> 20.  In certain instances, costs or expenses benefited Salomon and the Burton Defendants equally.  These costs and expenses were allocated 25% to Salomon, as reflected in Exhibit 4.
>
> 21.  Outlast paid directly additional expenses in the amount of $14,979 to Frederic T. Wilson, an expert retained in this case who opined about both the noninfringement of Salomon's products and the invalidity of the '810 Patent.  Because Mr. Wilson's fees because his work [sic] jointly benefited Salomon and the Burton Defendants, Salomon's share of his cost is $3,744.75.  Salomon has further reduced this amount by 50% based on the fact that Mr. Wilson opined about both invalidity and noninfringement.  Thus, Salomon is seeking only $1,872.38 of Mr. Wilson's fees, which is 50% of Salomon's 25% share of the cost.  The expenses sought by Salomon are listed in the Summary of Costs Allocated to Salomon (Exhibit 3).[7]
>
> 22. All of the costs for which Outlast and Salomon seek reimbursement, which total $19,047.72, were reasonably and necessarily incurred in litigating this case.
>
> 23. The claimed travel and subsistence costs represent the cost of attorney travel to depositions and court proceedings in this case.  These costs are the type of expenses that Holland & Hart ordinarily bills directly to its clients.

---

[7]       Actually, the document, Summary of Costs Allocated to Salomon, appears as Exhibit 4, Doc. No. 186. Exhibit 3 is the Declaration of Christopher Stamos, to which is attached a summary of Goodwin Proctor fees and the supportive Goodwin Proctor invoices, but no summary of Goodwin Proctor expenses.

24. The computerized legal research and PACER costs claimed in this case are customarily charged by Holland & Hart to its clients.  The firm tracks these charges by client to facilitate such billing.

25. As noted above, certain expenses were the subject of the agreement reached by the parties with respect to Salomon's bill of costs.  The expenses addressed in the agreement are not included in this fee request.

(Hartley Decl., Doc. No. 184.)

Of the $19,047.72 of expenses requested in connection with the work of Holland & Hart attorneys, I allow $1,872.38.  This consists of the request related to Mr. Wilson's expert work.  I deny any award for travel and subsistence expenditures because such expenditures more likely than not would have been necessitated by the colorable infringement claims addressed to the Bonfire products, even if the case had not involved the other products.  I deny any award for computer research and PACER expenses for the same reason.   As for expenses incurred by Goodwin Proctor counsel, their invoices reflect mostly small disbursements for toll calls, secretarial overtime, copying, printing, and scanning, but I cannot tell from these entries whether they would have been incurred if the case had been limited to the two colorable product claims or to what extent they would have been reduced.  I do not allow any additional award for expenses reflected in the Goodwin Proctor invoices.

Expenses:     $1,872.38

CONCLUSION

Based on my review of the supplemental briefing and exhibits, I recommend that the Court award Salomon a total of $108,307.54 in attorney fees and expenses.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

February 18, 2009